```
                                              FILED
        UNITED STATES DISTRICT COURT          JAN 0 3 2008
         SOUTHERN DISTRICT OF ILLINOIS
                                           CLERK, U.S. DISTRICT COURT
                                           SOUTHERN DISTRICT OF ILLINOIS
                                             EAST ST. LOUIS OFFICE
GREGORY J. TURLEY, #N-08083     )
                                )
            Plaintiff,          )
                                )
       -vs-                     )
                                )   Docket No. 08-07-MJR
LT. DANNY BEDINGER, et al.,     )
                                )
            Defendants.         )
                                )
(See I. JURISDICTION, B., below )
for full listing of named       )
defendants in this case)
```

## CIVIL RIGHTS ACT COMPLAINT
### Title 42, Section 1983 U.S. Code

I. **JURISDICTION:**

   A. Gregory J. Turley, N-08083
      Menard Correctional Center
      P.O. Box 711,
      Menard, IL 62259

   B. Danny Bedinger, Alan Uchtman, Donald Hulick, Gary Conder, Allen Martin, Ronald Meek, Dan Ohlau, Brad Thomas, Joe Cowan, Anthoney Ramos, Tyone Murray, Rod Blagojevich, Roger Walker Jr., Besty Spiller, Lt. Waller, Sgt. McDanials, Kim Baskins, Robert Cox, John Kellerhouse, Jeffery Broshears, and John & Jane Doe(s).

II. **PREVIOUS LAWSUITS:**

   A. Yes.

   B. TURLEY v. COWAN, et al., Case No. 01-188-MJR, filed March of 2001; Plaintiff prevailed at Jury Trial for retaliation claim on 9/12 & 13/06.

   TURLEY v. SMITH, et al., Case No. 02-C-4592, filed April of 2002; Northern Dist., Eastern Div., Hon. Charles L. Norgle Sr. presiding: Claim was in regard to denial of medical treatment/deliberate Indifference. Disposition of case in favor of defendants via summary judgment.

   TURLEY v. CATCHINGS, et al., Case No. 03-C-8491, filed November of 2003; Northern Dist., Eastern Div., Hon. Charles L. Norgle Sr. presiding; Claim was in regard to retaliation. Disposition of case in favor of defendants via summary judgment.

(continued)

-2-

III. . GRIEVANCE PROCEDURE:

    A. Yes.  B. Yes.  C. See Exhibits , D, H, J, J-1, N, O, & P.

IV. STATEMENT OF CLAIM:

    This is a Civil Rights Complaint filed by Gregory J. Turley, pro se, a state of Illinois prisoner, under 42 U.S.C. Section 1983, alleging United States constitutional right violations under the First, Eighth, and Fourteenth Amendments.

    The Plaintiff is presently a prisoner at Menard Correctional Center, wherein he alleges that retaliatory actions were taken against him, and a civil conspiracy ensued among the various named parties herein. Due to federal time constraints for filing civil right violation complaints, this Plaintiff cannot bring civil action for the various acts of retaliation, which occurred **prior** to violations alleged herein this complaint, and for which is the basis for the alleged retaliatory acts staged by the parties named herein this lawsuit. (See **Exhibits "A", "B", & "C"**)

--- CLAIM I ---

1. That on 8/19/05, this Plaintiff (hereafter "PLTF") was physically assaulted, in that he was choked, shoved into a wall, and verbally threatened by Defendant Danny Bedinger (hereafter "Def. Bedinger") after having reported an incident of staff misconduct to Internal Affairs Def. Brad Thomas. (See **Exhibit "D"**)

2. Def. Brad Thomas, conspired with Def. Bedinger and allowed Bedinger to assault, threaten, and intimidate this PLTF, in retaliation for his reporting the misconduct of officer Lindenburg, who had called this PLTF a "SNITCH" on 8/18/05.

3. PLTF also contends that Def. Bedinger's "de minis" assault was an act of retaliation for having previously reported misconduct by Bedinger, and to further "scare" the PLTF into refraining from reporting staff misconduct.

4. **Prior** to said 8/19/05 incident (physical assault and verbal battery by Lt. Bedinger), this PLTF had filed written complaints to administrative personnel regarding mail theft by Def. Bedinger. Said defendant had direct access to the cellhouses' outgoing institutional mail boxes, which he collected prisoner mail from daily. Said mail boxes included Warden, Major, and Grievance Officer boxes, that this PLTF had correspondence and grievances "disappear" therefrom (his grievances were intentionally lost, strayed, or stolen and destroyed) along with other offenders who voiced of their mail being lost too. Def. Bedinger, accordingly, "screened" ALL institutional mail leaving his Unit, and effectively was able to thwart and squelch a prisoners right to an authorized grievance process, or his sending letters to prison officials, i.e., Wardens, Major, Counselors, Grievance Officer, etc..

(continued)

5. Def. Bedinger, after conspiring with Def. Thomas on 8/19/05, and minutes after said "de minis" retaliatory assault upon PLTF Turley, took the PLTF to the punitive segregation unit in Menard and placed/signed Turley therein for twenty days.

6. Accordingly, PLTF Turley contends that I.D.O.C. Administrative Directives or Menard Institutional Directives were not followed when Lt. Bedinger placed this PLTF in punitive segregation from 8/19/05 until his release on 9/8/05; PLTF alleges that seg placement was in retaliation for his exercising his First Amendment right to file grievances, write letters of complaint, and report staff misconduct, particularly against Defendant's Bedinger, Uchtman, Murray, and Conder. (See **Exhibits "A","B", "C", & "D"**)

7. This PLTF also alleges in this claim that A/W Operations Allan Martin, in conspiracy with the other named defendants in this case, failed to correct the ongoing retaliatory attack by Def. Bedinger, and allowed the PLTF to be kept in segregation for his reporting employee misconduct.

8. PLTF further alleges that Def. Uchtman, in retaliation, too allowed Def. Bedinger to keep the PLTF in seg because he had reported staff misconduct, **and** because the PLTF had also reported misconduct by Def. Warden Ucthman. (See **Exhibit "E"**)

9. PLTF also contacted Clinical Services Supervisor Dan Ohlau regarding his illegal seg placement, and Def. Ohlau too, in retaliation for this PLTF's prior legal actions and grievances against him, ignored his job responsibilities, and allowed Turley to be kept in segregation.

10. The PLTF also alleges that Reviewing Officer for Inmate Disciplinary Reports (IDR's), Joe Cowan, who was a former defendant in case TURLEY v. COWAN, retaliated against this PLTF by ignoring written I.D.O.C. procedures and allowing Turley to be confined in punitive segregation in retaliation for the PLTF's previous legal actions against him.

11. This PLTF never received **any** disciplinary report, investigative report, temporary confinement report, or **any** documentation to provide an explanation for his punitive segregation placement, which lasted for 20 days; said seg placement took place directly after Def. Bedinger assaulted and called him a "SNITCH". During said seg placement, PLTF was denied access to his personal property for 15 days, and never received his audio/visual equipment which other prisoners received who were given due process and advised as to **why** they were in segregation. PLTF was also denied yard/recreation periods, and his monthly state stipend of .34¢ per day, during his punitive seg placement, all in retaliation for his exercising his 1st and 14th Amendment rights. (See **Exhibit "F"**)

12. PLTF contends that Def.'s Thomas, Bedinger, Ucthman, Martin, Conder, Ramos, and other John and Jane Doe(s), conspired and knowingly allowed the placement of Turley into punitive segregation during the hottest part of summer without a fan, in retaliation for him being a "JAILHOUSE LAWYER" and his reporting of abusive prison conditions; said punishment was to dissuade the PLTF from taking further legal actions to correct prison corruption and abusive treatment. (Violations 1st,8th,14th Amend.,U.S. Const.)

(continued)

-4-

(See Exhibit "J")     --- **CLAIM II** ---     (Griev.Issue 79-10-05)

13. That on 9/8/05, PLTF was released from his retaliatory segregation placement, and was placed back into Def. Bedinger's assigned cellhouse.(South Lower Unit)

14. Thereafter, until **9/30/05**, Def. Bedinger stalked this PLTF on a daily basis, in that he would stare at Turley during his line movement, and walk slowly by his cell several times each day staring at Turley in an intimidating manner; furthermore, Lt. Bedinger would strategically place himself along the direct route/walking line that this PLTF had to travel, to harass, annoy, and intimidate him, as if to dare him (PLTF) to say anything to the Defendant.

15. Said actions in paragraph 14 were acted out by Def. Bedinger as retaliation because Turley had reported Bedinger's - and other employee's - misconduct, specifically Def. Bedinger's attack upon the PLTF on 8/19/05.(See CLAIM I)

16. On 9/30/05, after having reported said continuing retaliation by Bedinger to Def. Conder, Lt. Bedinger conspired with Def's Conder, Ramos, Waller, and Sgt. McDanials, to move the PLTF to the NOrth 1 Cellhouse Unit, and place him on 1 (One) Gallery. (Note: 1 Gallery of the North 1 Unit is a known area where mentally-ill prisoners are housed, along with disabled inmates and newly-transferred-in Offenders; said Gallery also has a restricted Yard/Recreation area)

17. On 1 Gallery, the PLTF alleges that he was placed intentionally in a cell with a mentally-ill inmate who did not take showers (Def. Bedinger was very well aware of this). (See **Exhibit "G"**)

18. This PLTF alleges that Def.'s Conder, Bedinger, Ramos, Waller and McDanials, conspired to place the PLTF in this North 1 Unit, which has the **smallest cells** in use for two prisoners in the State of Illinois prison system; said placement was in retaliation for the PLTF reporting staff misconduct and because these defendant's labled Turley a "Jailhouse Lawyer/Litigator".

19. The PLTF's Counselor, Def. John Kellerhouse, conspired with named defendants in this CLAIM, in that Kellerhouse held the PLTF's grievances on LT. Bedinger's conduct, and C/O Lindenbergs conduct, to create a Prisoner Litigation Reform Act violation, knowing that by holding said grievances, that this PLTF would become ineligible to access the Courts because said grievances would be deemed to not have been "timely" filed. (See **Exhibit "H"**)

(continued)

(See Exhibit "J-1")        --- **CLAIM III** ---        (Griev. Issue 13-11-05)
                                                         79-10-05

20.   In Claim II, this PLTF alleges that cell size in the North 1 General Population cellhouse at M.C.C. (36' to 40' square feet), combined with the number of hours per day, week, & month, that he was confined and double-celled (two prisoners per cell) therein, violates his Eighth Amendment right to be free from cruel and unusual punishment. (See **Exhibit "J-1"**)

21.   The PLTF alleges that Def.'s Blagojevich, Walker Jr., Meek, Uchtman, Cox, Martin, Conder, Ohlau, Spiller, Ramos, Waller, McDanials, Baskins, and John & Jane Doe(s), knowingly place and house approximately **600** plus general population, long term prisoners in the North 1 Cellhouse Unit, wherein the cell-units are the smallest in use for two prisoners per cell in all of I.D.-O.C.; this is cruel and unusual punishment, based on the number of hours that two prisoners are confined within said cell ratio per day, week, and month.

22.   Said 36' to 40' sq.ft. cell (cell size varys due to rules and layout of beds & sink/toliets in cells) was designed in **1932** for a single prisoner, wherein a Murphy Bed (designed in 1929 - See Webster Dictionary) was attached to the cell wall and could be folded-up to allow an inmate more room/area to move about in. At some point in the 1970's, solid bunk beds were fashioned from the single Murphy Bed design; and since that time, the only space to move about within the now two-man cell is a 7' foot, 8" inch by 19" inch area. (See **Exhibits "L-1", "L-2", & "L-3"**: Cell Design Illustrations of said cells)

23.   PLTF alleges that the paucity of the 36' to 40' sq.ft. cell area for two long term, general population adult male prisoners, in combination with **a)** the number of hours he's confined thereto daily, weekly, and monthly, **b)** without fresh air and exercise, **c)** in an enclosed area where ventilation is poor - and often kept turned-off - and he's exposed to \***toxic** secondhand tobacco smoke, creates a known viable Eighth Amendment violation by the defendant's named in this Claim (See para.#21); (*Note: In June of 2006, U.S. Surgeon General Richard Carmona, released a new report on secondhand tobacco smoke which states in part "...there is no risk-free level of exposure to someone else's drifting smoke..." and that "...separating smokers from non-smokers, cleaning the air, and ventilation systems **don't** eliminate exposure to secondhand smoke.)

24.   This PLTF, after being housed in this cellhouse, experinced breathing problems, severe gastrointestinal pain and problems (severe constipation, flatulence, etc.), stiffing in his joints (knees and back area primarily), which caused this PLTF extreme stress, psychological suffering, and bodily injury BECAUSE of the factors (a, b, & c) set forth in para.#23; PLTF has since been diagnosed with **Irritable Bowel Syndorome (IBS)**, which is caused by psychologic stress and anxiety, and is a very painful condition.

25.   The PLTF also alleges that his placement in a cell with a known inmate who didn't take showers, was direct retaliation by Def. Bedinger, and harassment with the intention being to humiliate and inflict psychological pain, which was also permitted by the named defendants in para.#28, because the PLTF too was labled a "JAILHOUSE LAWYER, and because he exercises his rights to report staff misconduct and corruption.

(continued)

26.     Turley was also kept in said two-man cell for at least $23\frac{1}{2}$ hours on most days, and no less than 21 hours on other days; at one point the PLTF spent 24 hours per day for seventeen straight days due to an institutional lockdown. Inmates are also confined for even longer periods of time inside these particular cells during lockdown situations that have nothing to do with said housing unit or facility even. (Note: Prisoners with severe physical & mental disabilities are routinely confined in these small cells with normal prisoners. Offender James Patterson is a witness to this claim.)

27.     PLTF kept note on out-of-cell time that he was allowed over a period of months; said out-of-cell time includes recreation, diningroom periods, and shower time combined. It is alleged that the named defendants in this Claim, in placing two prisoners in said cells for prolonged periods of time without release therefrom daily, are creating a known palable harm; such confinement, as this Southern District Court found in **Lightfoot v. Walker**, 486 F. Supp. 504(S.D.Ill.1980), is unconstitutional.

### --- CLAIM IV ---

28.     This PLTF, in being confined in the North 1 Unit, was given access to a very restricted Yard/Recreation area, which was previously designed for Protective Custody prisoners who had to be isolated from general population inmates.

29.     Said Yard/Recreation area, known as the North 1 Yard, was **less than an acre** in size/area, and I.D.O.C. personnel, namely, Meek, Uchtman, Martin, Conder, Ohlau, Spiller, Ramos, Waller, McDanial, and Social Worker Kim Baskins, knowingly would allow placement of 100 to 180 general population prisoners onto this small yard area at one time for a three (3) hour period, three (3) days per week; PLTF personally sent letters, or spoke verbally to the named defendants in this Claim (named in this paragraph) in regard to the danger said crowed yard conditions imposed on him when he tried to exercise.

30.     This PLTF alleges that the placement of said number of prisoners (see para. #29) into said Yard enclosure, created a known **unsafe** environment, which this PLTF filed grievance about. (See **Exhibit "J"**)

31.     On a few various occcassions, this PLTF was physically assaulted by prisoners who were walking within this very small enclosure, as he was trying to exercise by running on a path that encircled said North 1 Yard. (See **Exhibit "M"**)

32.     The PLTF had previously advised said personnel that he had a right under Illinois law to a healthful and safe environment, and that he feared being accidently assaulted when he tried to exercise on said Yard. (See **Exhibit "J"**, and Article XI, Environment, section 2, Rights of Individuals under the Illinois Constitution.

33.     The PLTF alleges that Def.'s Ucthman, Ramos, Conder,Waller, McDanials, Ohlau, Spiller, and Martin, acted with **deliberate indifference** by ignoring a pronounced, cited security problem, that created a known danger for this PLTF, which caused him to be assaulted.(See **Exhibit "M"**)

(continued)

### --- CLAIM V ---

34.     PLTF alleges that Def.'s Ucthman, Conder, and John or Jane Doe(s) violated his rights to equal protection of law, in retaliating and discriminating against him because he exercised his protected First Amendment right to write grievances and report - or complain - about staff misconduct, harassment, etc., in that they denied the PLTF his **earned** privilege to a job assignment without reason when he applied for Inmate Janitor or Dietary assignments; said jobs are generally the easiest jobs to be assigned to. (See **Exhibit "N"**)

35.     PLTF, who was in "A" Grade and a l o w aggression classified prisoner, was "denied" said jobs, and later observed other prisoners who had just previously been released from punitive segregation, and who both said offenders (Joesph Hampton #B-17362 & Kenneth Broughton) had served six (6) month segregation terms each after testing positive for illegal drug use, be given janitor job assignments just 90 or so days after their punitive seg releases. (See **Exhibit "O"**)

36.     This PLTF alleges that he was in fact denied his earned privilege to a job assignment as part of said Def.'s Ucthman, Conder, and Doe(s) orchestrated campaign of official harassment directed against him out of sheer malice, and only because he exercised his constitutional rights to complain about his conditions of confinement, and was therefore labled a "Jailhouse Lawyer", which said officials view as being a "SNITCH" or "Snitched on" due to actions filed by "Jailhouse Lawyers".

### --- CLAIM VI ---

37.     On 4/2/07, this PLTF was written an Inmate Disciplinary Report (IDR) wherein it was alleged that he and his cellie missed the opening of their cell door when they were "cranked" to be opened upon returning from the supper meal. (See **Exhibit "R"**)

38.     Along with this PLTF, there were seven other prisoners written the same IDR: these offenders resided in cells 717, 719, 720, and 721 which was PLTF's cell. Said cells did not open due to a known malfunction in the cell door "cranking system"; these same cell doors had failed to open on other occasions, and day shift officers (7-3 Shift) were fully aware of said door malfunction.

39.     On 4/6/06, while this PLTF was on "deadlock" in his cell awaiting the Adjustment Committee Hearing on said IDR, Def. Lt. Bedinger, who was not assigned to said North 1 Cellhouse Unit, appeared at this PLTF's cell door and advised him that he (Bedinger) was going to make sure that this PLTF was sent to segregation for said IDR; Clearly, Def. Bedinger came to my cell door to make sure that I would know that he was going to seek retaliatory actions against me because of my prior reporting of misconduct by him upon this PLTF.

40.     On 4/7/06, this PLTF was taken for the Adjustment Committee Hearing along with the other offenders identically charged, and after the first offender entered and the two Officers went in with him to explain the malfunction of said doors, the Adj.Comm. Chairman, Lt. Jeffery Broshears, discontinued the hearings for further investigation by him.

(continued)

-8-

41.     On 4/11/06, Lt. Broshears re-convened the IDR Hearings and found this PLTF "Guilty" of said IDR, after this PLTF explained that said cell doors were broken, and that the Officers who routinely worked the "Crank Box" and 7 Gallery, had advised him (Def. Broshears) of the malfunction; PLTF further advised LT. Broshears about what LT. Bedinger had stated to him on 4/6/06, concerning retaliation, at which time Def. Broshears smiled and stated that he had been advised by "his boss" (Def. Conder) that he was to find us all "Guilty".

42.     Def. Broshears sentenced this PLTF to two (2) months punitive segregation, 2 months demotion to "C" Grade, and 2 months of Commissary Denial; PLTF was then taken to segregation and placed in a control segregation cell, on the highest aggression - and most dangerous - cell gallery in Menard.

43.     Upon receiving the IDR HEARING SUMMARY REPORT a week later, this PLTF learned that Def. Broshears FAILED to follow I.D.O.C.Rules (See DR 504) which state that if any **exonerating evidence** is offered in the defense of said IDR charges, that it must be listed in the IDR Hearing Summary Report, and a reason must be given for the non-use of such evidence. It is herein noted and alleged that Def. Broshear knowingly ignored exonerating evidence (Officers testimony, Maintance Log Book that showed the doors were being worked-on, and that 3-11 Shift officers were unfamiliar with said door problem and did not roll the crank to the appropriate position) because he was in conpiracy with Def. Conder and Bedinger to retaliate against this PLTF - by sending him to seg wrongfully - be-because the PLTF had reported misconduct by Conder and Bedinger previously. (See **Exhibit "Q"**)

44.     This PLTF filed grievance on the retaliatory actions as stated in this Claim, and Appealed the Grievance Officer decision. After 18 months, this PLTF has not received answer to said appeal, nor a reason for the delay in responding to the appeal outside the time limitations set by I.D.O.C. Rules; therefore, this PLTF has exhausted his administrative remedies as much as they were made available for him to exhaust. (See **Exhibit "P"**)

45.     PLTF further alleges that Def. Hulick violated his 1st and 14th Amendment rights when, in conspiracy with Def.'s Conder, Bedinger, and Broshears, he ignored the PLTF's personal letter which advised him about Def. Bedinger's conduct and harassment - as reported in this Claim and other Claims herein this complaint; Def. Hulick also supported said retaliation by named defendants, in that he approved and authorized the IDR punishment and Grievance Officer findings. (See **Exhibits "Q" & "P"**)

(continued)

-9-

## V.        REQUEST FOR RELIEF:

The Plaintiff, Gregory J. Turley, Pro se, brings this suit against all named defendants in their OFFICIAL and INDIVIDUAL capacities, and PRAYS that this Honorable Court will:

A)  Award NOMINAL damages in the following amounts to vindicate the Plaintiff's rights, in that the Defendants willfully and knowingly violated:

1) $20,000 jointly and severally against **all** defendants named herein.

B)  Award PUNITIVE damages in the following amount to deter unnecessary and wanton infliction of pain caused by official or individual acts that were without penological justification, resulting in gratuitous infliction of suffering - as such gratuitous infliction of pain always violates contemporary standards of decency and need not produce serious injury in order to violate the Eighth Amendment of the U.S. Constitution:

1) $20,000 jointly and severally against **all** defendants named herein.

C)  The PLTF further seeks DECLARATORY JUDGMENT asking that the Defendant's, Blagojevich, Walker Jr., and Hulick, adhere to State Law 730 ILCS 5/3-7-3(b) in accordance to Claim III herein this complaint, and that they **reduce** the double-cell occupancy in the North 1 Cellhouse at Menard to **single-cell** occupancy only, and allow those offenders housed therein a **daily, three-hour** out of cell recreation period.

D)  GRANT such other relief to stop said constitutional right violations and as it may appear that the Plaintiff is entitled.

## VI.       JURY DEMAND:

The Plaintiff does request a trial by jury.(See Fed.R.Civ.P. Rule 38)

### DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I, the undersigned, certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and (b) of the FEDERAL RULES OF CIVIL PROCEDURE. The undersigned also recognizes that failure to comply with Rule 11(a) & (b) may result in sanctions, monetary or non-monetary, pursuant to Federal Rules of Civil Procedure 11(c).

The Plaintiff hereby requests the Court issue all appropriate services and/or notices to the defendants.

Signed this **27th** day of December, 2007.   //s// Gregory J. Turley
Gregory J. Turley, Plaintiff
N-08083, Menard Corr.Center
P.O. Box 711
Menard, Illinois 62259