IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| GREGORY TURLEY, #N-08083, | ) | Case No. 08-cv-0007-MJR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DANNY BEDINGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

Introduction and Procedural History

Plaintiff, an inmate in the Menard Correctional Center, filed the above-captioned lawsuit in this Court in January 2008.  On January 3, 2008, Plaintiff moved for leave to proceed in forma pauperis (ifp) herein.  The Court granted that motion six days later.  On August 14, 2008, however, the Court revoked Plaintiff's ifp status after determining that he already had "three strikes" under 28 U.S.C. § 1915(g).  That determination was made using the method of assessing strikes which was employed at that time (counting dismissed *claims* as well as dismissed *actions* as strikes). In the Order revoking Plaintiff's ifp status, the Court directed Plaintiff to pay the $350 filing fee within 15 days or face dismissal of his suit.  Plaintiff did not do so.

Instead, he appealed the August 14, 2008 Order to the United States Court of Appeals for the Seventh Circuit.  Turley prevailed on appeal.  In December 2010, the Seventh Circuit reversed this Court's ifp ruling and remanded the case, relying on a November 2010 opinion holding that strikes should be assessed only where the entire action is dismissed under 1915A,

1

instead of when a part of the action is dismissed.  ***See Turley v. Gaetz***, 625 F.3d 1005 (7th Cir. 2010).  Because Plaintiff did not have three strikes, he was not precluded from bringing this lawsuit.

Upon remand, the Court granted Plaintiff's ifp motion (see Jan. 12, 2011 Order at Doc. 20).  Filed under 42 U.S.C. §1983, this action for deprivations of constitutional rights comes now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. §1915A.  That statute provides, in pertinent part:

> **(a)  Screening.**B The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> **(b)  Grounds for Dismissal.**B On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaintB
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Upon careful review of the complaint and any supporting exhibits, the Court finds that some of the claims in the complaint may be dismissed at this point in the litigation.

**<u>Facts</u>**

On August 19, 2005 Plaintiff was choked and shoved into a wall by Defendant Bedinger after Plaintiff filed a complaint relating to an earlier incident.  Bedinger then took Plaintiff to segregation, where he remained for 20 days.  This stay in segregation was the result of a

conspiracy to retaliate by Defendants Murray, Thomas, Bedinger, Uchtman, Martin, Conder, Ramos, and other John Does. Defendants Ohlau, and J. Cowan were made aware of Plaintiff's placement in segregation, but failed to do anything to correct the situation as an attempt to further the retaliation.

During his stay in segregation, Plaintiff was denied access to his personal belongings as well as recreation periods, which Plaintiff alleges was in retaliation for exercising his right to file grievances. Defendant Kellerhouse held onto Plaintiff's grievances, failing to act on them until they were considered untimely, in retaliation for filing the grievances. On an unspecified date, Defendants Uchtman and Conder further retaliated against Plaintiff by ensuring that he was denied a job assignment for which he had applied.

Around September 30, 2005, Defendants Bedinger, Conder, Ramos, Waller, and McDaniel conspired to retaliate against Plaintiff by moving him to North 1 cellhouse unit, where mentally-ill inmates are housed. This cellhouse has the smallest cells used in the state of Illinois to hold two prisoners, and Plaintiff experienced health problems ranging from joint pain to gastrointestinal issues. Defendants Blagojevich, Walker Jr., Meek, Uchtman, Cox, Martin, Conder, Ohlau, Spiller, Ramos, Waller, McDaniel, Baskins, and other John Does place inmates in these cells knowing the small size and conditions of these cells.

As a member of this cellhouse, Plaintiff was given access to a restricted yard area. Defendants Meek, Uchtman, Martin, Conder, Ohlau, Spiller, Ramos, Waller, McDaniel, and Baskins were aware of the small size of the yard, but continued to allow a large population of inmates to use the yard at the same time.

On April 2, 2007, Plaintiff received a disciplinary report alleging that he and his cellmate

missed the opening of their cell door upon returning from supper.  The cell doors had not opened as a result of a known malfunction in the system.  On April 7th, Plaintiff was seen by the disciplinary hearing board regarding the incident, where Defendant Broshears stated that he needed to further investigate.  Four days later, Defendant Broshears found Plaintiff guilty and sent him to segregation, despite there being evidence of Plaintiff's innocence.  Sometime thereafter, Plaintiff wrote a letter to Defendant Hulick describing the actions of various Defendants, but that letter was ignored.

**Analysis**

To facilitate the orderly management of future proceedings in this case, and in accord with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court will organize the claims in Plaintiff's *pro se* complaint and related pleadings into numbered counts, as shown below.  The parties and the Court will use these designations in all future pleadings and Orders herein, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

**Count 1 -- Excessive Force**

Plaintiff claims he was subjected to excessive force when Defendant Bedinger choked Plaintiff, then slammed him into a wall.  The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort >repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Although correctional officers may use force to subdue prisoners, as noted above, force may not be used specifically to cause harm. Plaintiff does not state what he was doing, if anything, to cause Defendant Bedinger to use force. What he does state, however, is that such forceful acts included choking, which cannot be considered a de minimis use of force. It is not clear at this point whether Bedinger's use of force was an attempt to subdue Plaintiff or to cause real harm. For this reason, this count cannot be dismissed at this time.

**Count 2 -- Retaliation for Grievances**

Plaintiff next claims that a number of Defendants took actions against him in retaliation for filing grievances. Specifically, Plaintiff alleges that he was taken to segregation by Defendant Bedinger; was not removed from segregation by Defendants Murray, Thomas, Ramos, Conder, Martin, Ohlau, J. Cowan, and Uchtman though they knew about the illegal placement; had grievances ignored by Defendant Kellerhouse until they became untimely and thus unactionable; was denied a job assignment by Defendants Uchtman and Conder; and was moved to a small cell by Defendants Bedinger, Conder, Ramos, Waller, and McDaniel.

5

Even though some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under §1983. *See Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper."); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995)(retaliatory discipline).

Plaintiff alleges that the actions listed above were taken by the Defendants in an attempt to retaliate against Plaintiff's writing of grievances, a protected right. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the protected right and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Plaintiff has specified that a protected right, his right to file grievances, has been challenged by the various retaliatory actions of Defendants Bedinger, Murray, Thomas, Ramos, Conder, Martin, Ohlau, J. Cowan, Uchtman, Kellerhouse, Waller, and McDaniel. Again, even though some of the actions taken by the Defendants would not alone rise to claim status, if they

were taken in an attempt to retaliate against Plaintiff's first amendment rights, they are in fact actionable.   Therefore, this count against Defendants Bedinger, Murray, Thomas, Ramos, Conder, Martin, Ohlau, J. Cowan, Uchtman, Kellerhouse, Waller, and McDaniel cannot be dismissed at this time.

### Count 3 -- Eighth Amendment

Plaintiff next claims that Defendants Blagojevich, Walker Jr., Meek, Uchtman, Cox, Martin, Conder, Ohlau, Spiller, Ramos, Waller, McDaniel, Baskins, and John Does placed Plaintiff and other inmates in small cells.  Plaintiff claims that the size of these cells combined with the number of hours an inmate is expected to spend in a cell amounts to cruel and unusual punishment.   Plaintiff also alleges that Defendants Meek, Uchtman, Martin, Conder, Ohlau, Spiller, Ramos, Waller, McDaniel, Baskins, and John Does were aware of the small size of the prison yard where inmates are sent for exercise and recreation, but continued to allow large numbers of inmates to use the yard at the same time, creating a safety hazard.

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment.  It has been a means of improving prison conditions that were constitutionally unacceptable.  *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994).  As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime .*Id.,* (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  The Constitution also prohibits punishment that is totally without penological justification.  *Gregg*, 428 U.S. at 183.

7

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause.  First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).    The second requirement is a subjective element  establishing a defendant's culpable state of mind.  *Id.*

The defining Supreme Court case addressing issues of overcrowding is *Rhodes v. Chapman*, 452 U.S. 337 (1981).  In *Rhodes*, the plaintiffs contended that the lodging of two inmates in a single cell ("double celling") constituted cruel and unusual punishment.  The Supreme Court disagreed, concluding that "[a]t most ... double celling inflicts pain," *Id.* at 348-49, but not the Aunnecessary and wanton infliction of pain@ that violates the Eighth Amendment.  *Id.* at 346.  The Court found that the Constitution "does not mandate comfortable prisons," *Id.* at 349, and only those deprivations denying "the minimal civilized measure of life's necessities," *Id.* at 347, are sufficiently grave to form the basis of an Eighth Amendment violation.  In reaching this conclusion, the Court stated:

> Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment. . . . But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

*Id.* at 347; *see also Wilson v. Seiter*, 501 U.S. 294 (1991).

In the case at bar, Plaintiff has not established that the use of small cells rises to the level of an eighth amendment claim.  Plaintiff has not sufficiently alleged that the use of subjectively

small cells, which are used to house many of the inmates at Menard, are the cause of his various health issues. Plaintiff complains that he has joint and gastrointestinal issues, but these may have occurred even if Plaintiff was housed in a cell the size of a football field. In any event, Plaintiff has not alleged that the small cell is the direct cause of his ailments, and thus there was no apparent risk to his health and safety when Plaintiff was housed in a small cell.

As to the use of a small yard, Plaintiff has again failed to raise a claim that reaches eighth amendment status. Even though a number of inmates are placed in the yard at the same time, many inmates are placed in the cafeteria as well as other confined places within the prison at the same time. As the Supreme Court has stated, prisons are not meant to be comfortable, spacious places. *Rhodes*, 452 U.S. at 347. Plaintiff has not sufficiently alleged that the size of the recreational yard denies him life's necessities or creates a safety risk that is not present in any of those other confined places in prison. Because Plaintiff has failed to contend that the use of small prison cells and a small prison yard amounts to cruel and unusual punishment, this count against Defendants Blagojevich, Walker Jr., Meek, Uchtman, Cox, Martin, Conder, Ohlau, Spiller, Ramos, Waller, McDaniel, Baskins, and John Does is dismissed with prejudice.

### Count 4 -- Failure to Protect

Plaintiff claims that he wrote a letter to Defendant Hulick concerning the actions of the Defendants herein described, and Defendant Hulick did not respond. Plaintiff claims that this failure to respond amounts to a dereliction in Hulick's duty to protect Plaintiff. Plaintiff apparently believes that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That belief directly conflicts with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v.*

9

*Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)(doctrine of respondeat superior does not apply to §1983 actions).  As Chief Judge Easterbrook has explained:

> Public officials do not have a free-floating obligation to put things to rights, disregarding rules (such as time limits) along the way.
>
> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.  The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under §1983 for not being ombudsmen. [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to [results].  That can't be right.  *See Durmer v. O'Carroll*, 991 F.2d 64 (3[d] Cir. 1993).

*Burks*, 555 F.3d at 595.

Plaintiff does not allege that Defendant Hulick personally caused the harm to Plaintiff. The letter sent to Defendant Hulick specifically mentions the misdeeds of other Defendants, deeds that were not committed by Defendant Hulick personally.  Because Defendant Hulick is not responsible for misdeeds allegedly caused by other Defendants, this claim for failure to protect must be dismissed with prejudice.

### Count 5 -- Due Process

Finally, Plaintiff claims that he received a faulty disciplinary report alleging that he and his cellmate missed the opening of their cell door upon returning from supper, which was caused by a known malfunction in the system.  Plaintiff was seen by the disciplinary hearing board regarding the incident.  Defendant Broshears found Plaintiff guilty and sent him to segregation,

despite there being evidence of Plaintiff's innocence.   Plaintiff does not elaborate on why Defendant Broshears ignored the evidence. The disposition of Count 5 is discussed further below, as it raises the question of potential severance.

**Severance of Claims**

Rule 18(a) of the Federal Rules of Civil Procedure permits Plaintiff to assert all his claims against one defendant in one civil action. So Plaintiff may properly bring Counts 1 and 2 in the same complaint because both counts seek relief against Defendant Bedinger. The joinder of Defendants Hulick, Blagojevich, Walker Jr., Meek, Cox, Spiller, Baskins and John Does from Counts 3 and 4 with Defendants Thomas, Ramos, Conder, Martin, Ohlau, J. Cowan, Uchtman, Kellerhouse, Waller, McDaniel and Bedinger from Counts 1 and 2 of the complaint appears to be proper under Rule 20(a)(2) which provides:

> [A]ny right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action.

But Count 5 seeks relief only against Defendant Broshears.  The claims asserted in Count 5 do not appear to arise from the same transaction, occurrence, or series of transactions or occurrences as Counts 1, 2, 3, and 4.  The Seventh Circuit recently confirmed that separate, unrelated claims belong in different suits.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). On review of the complaint, the claims against Defendant Broshears in Count 5 of the complaint are *not* sufficiently related to the claims against Defendants Hulick, Blagojevich, Walker Jr., Meek, Cox, Spiller, Ramos, Baskins, Thomas, Ramos, Conder, Martin, Ohlau, J. Cowan, Uchtman, Kellerhouse, Waller, McDaniel, Bedinger, and John Does in Counts 1, 2, 3, and 4 to

11

allow them to proceed together in one lawsuit.

Plaintiff is **ADVISED that the Court is inclined to sever Count 5.**  If these claims contained in Count 5 are severed, they would be removed from this case and opened in a new case.   A new case number would be assigned and a second filing fee would be assessed. Because the imposition of a second filing fee may impose a financial burden on him, Plaintiff is **FURTHER ADVISED** that he may avoid severance (and the imposition of a second filing fee) by filing a **motion to voluntarily dismiss Count 5 without prejudice** by **March 28, 2011**, which is within forty five days of the date of this order.  Before filing that motion, Plaintiff shall consider whether he could re-file the dismissed claims without running afoul of the applicable statute of limitations.

**Pending Motions:**

On February 7, 2011 Plaintiff filed a motion with this Court seeking a threshold screening of his complaint (Doc. 21). Because this screening is being conducted by way of this order, this motion is **DENIED** as moot.

**Disposition**

**IT IS HEREBY ORDERED** that Defendants **HULICK, BLAGOJEVICH, WALKER JR., MEEK, COX, SPILLER, BASKINS** and **JOHN DOES** are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the Clerk shall prepare for Defendants **BEDINGER, MURRAY, THOMAS, RAMOS, CONDER, MARTIN, OHLAU, J. COWAN, UCHTMAN, KELLERHOUSE, WALLER,** and **MCDANIEL**:  (1) a Notice of Lawsuit and Request for Waiver of Service of Summons; and (2) a Waiver of Service of Summons.  The Clerk is directed to mail the forms, a copy of the Complaint, and this Memorandum and Order to each

12

Defendants' work address or employer address as provided by Plaintiff.  If a Defendant fails to sign and return the Waiver to the Clerk within 30 days from the date said forms were sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the address provided by Plaintiff, the Correctional Center shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above, or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the Court file, nor disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every further pleading or document that he submits for consideration by the Court.  Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date on which a true and correct copy of any document was served on Defendants or their counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. §1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to **United States**

13

**Magistrate Judge Stephen C. Williams** for further pretrial proceedings.

Furthermore, this entire matter is hereby **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. §636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under **a continuing obligation** to keep the Clerk and each opposing party informed of any change in his address, and that the Court will not independently investigate his whereabouts. Any notification of an address change shall be made in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED: February 11, 2011.


/s/ Michael J. Reagan
**United States District Judge**

14