UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GREGORY J. TURLEY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 3:08-CV-0007-GCS ) |
| FRANK LAWRENCE, | ) ) |
| Defendants.[1] | ) ) |

MEMORANDUM and ORDER

SISON, Magistrate Judge:

BACKGROUND

Pending before the Court is Defendant's October 25, 2018 motion to reconsider the Court's Order and injunction (Doc. 370) and Judgment (Doc. 371). Plaintiff opposes the motion (Doc. 376).[2] After reviewing the entire record and the applicable law, the Court denies the motion.

Originally, Gregory Turley, *pro se* and a former inmate at Menard Correctional Center ("Menard"), filed suit for violations of his constitutional rights. Turley alleges,

---

[1] Currently, Frank Lawrence is the Warden at Menard Correctional Center. Thus, the Court *sua sponte* **SUBSTITUTES** Lawrence for defendant Jaqueline Lashbrook.

[2] On March 11, 2019, Turley moved to file a response out of time to the motion for reconsideration (Doc. 374). The Court allowed the motion and Turley filed the response on March 15, 2019 (Docs. 375 & 376). Turley opposes the motion arguing that it is untimely and that the issues Defendant raises were addressed previously in his supplemental brief regarding pretext and that Defendant should have objected to the Court considering his medical conditions without an expert.

*inter alia*, that being housed in the North I cell house of Menard with a cellmate constituted deliberate indifference to his health and well-being as a result of the cells being cramped and too small for two adult inmates. Turley's claims were dismissed from the case at the initial 28 U.S.C. § 1915A review while other claims proceeded to trial. Turley appealed and the Seventh Circuit reversed the dismissal of Turley's cell size claims and those claims went to trial. At the close of Turley's evidence, the Court dismissed the individual capacity claims against the named defendants leaving a claim for injunctive relief, which sought an Order prohibiting the Warden of Menard from placing Turley in the North I cell house with a cell mate.

On September 26, 2018, Magistrate Judge Stephen C. Williams issued an Order and Injunction enjoining then Menard Warden Jacqueline Lashbrook in her official capacity, and any of her successors in their official capacity, from housing Turley in the North I cell house with one or more inmates or cellmates (Doc. 370).[3] The following day, the Clerk of Court entered Judgment, *inter alia*, reflecting the same (Doc. 371). On October 25, 2018, Lashbrook filed a motion to reconsider the Court's Order and Injunction (Doc. 370) and Judgment (Doc. 371). Turley opposes the motion (Doc. 376). As the motion is ripe, the Court turns to the merits of the motion.

---

[3] On May 25, 2011, upon consent of the parties and pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, this case was transferred to Magistrate Judge Williams for final disposition (Doc. 78). On January 9, 2019, this case was reassigned to the undersigned magistrate judge for disposition (Doc. 373).

<u>ANALYSIS</u>

The Seventh Circuit has held that a motion challenging the merits of a district court order will automatically be considered as having been filed pursuant to either Rule 59(e) or Rule 60(b). *See Mares v. Busby,* 34 F.3d 533, 535 (7th Cir. 1994). Different timetables and standards govern these motions. Rule 59(e), for example, permits a court to amend a judgment only if the movant demonstrates a manifest error of law or fact or presents newly discovered evidence that was not previously available. *See Sigsworth v. City of Aurora*, 487 F.3d 506, 511-512 (7th Cir. 2007). Rule 60(b), on the other hand, permits a court to relieve a party from an order or judgment based on such grounds as mistake, surprise or excusable neglect by the movant; fraud or misconduct by the opposing party; a judgment that is void or has been discharged; or newly discovered evidence that could not have been discovered within the 28-day deadline for filing a Rule 59(b) motion. However, the reasons offered by a movant for setting aside a judgment under Rule 60(b) must be something that could not have been employed to obtain a reversal by direct appeal. *See Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000).

Both Rule 59(e) and 60(b) eliminate the finality of a judgment and permit further proceedings, but Rule 59(e) generally requires a lower threshold of proof than does Rule 60(b). *See Helm v. Resolution Trust Corp.,* 43 F.3d 1163, 1166 (7th Cir. 1995). *See also Ball v. City of Chicago,* 2 F.3d 752, 760 (7th Cir. 1993)(distinguishing the "exacting standard" of Rule 60(b) from the "more liberal standard" of Rule 59(e)).

The purpose of a motion to alter or amend judgment under Rule 59(e) is to ask the court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 174 (1989). "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 954 (7th Cir. 2013)(citation and quotation marks omitted).

Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca,* 545 F.3d 582, 584 (7th Cir. 2008). A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick,* 594 F.3d 562, 568 (7th Cir. 2010). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000)(citation and quotation marks omitted). Furthermore, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Chapman v. United States*, No. 3:16-CV-0691-DRH, 2016 WL 6095316, at *1 (S.D. Ill. Oct. 19, 2016).

First, the Court addresses the untimeliness issue raised by Turley in his opposition. Turley argues that Defendant's motion is untimely as it was filed 29 days

after the September 26, 2018 Injunction Order was entered. By the Court's calculation, however, the Court finds the motion is timely filed. The final *Judgment* in this case was entered on September 27, 2018. The motion to reconsider the Order and Injunction and the Judgment was filed on October 25, 2018, which is 28 days after the Judgment was entered. Therefore, the Court will address the motion under the easier to prove Rule 59(e) standard. *See, e.g., United States v. Deutsch*, 981 F.2d 299, 301-302 (7th Cir. 1992)(recognizing bright line rule for determining whether a motion falls under Rule 59(e) or Rule 60(b) as dependent on the date of service of the motion).[4]

The Court finds that Defendant is not entitled to relief under the Rule 59(e) standard. After reviewing the record, the Court finds that Defendant identifies no manifest error of law or newly discovered evidence which would warrant the granting of relief under the rule. For example, Defendant has not presented new evidence or new arguments that were not previously unavailable at the time of the Court's rulings. Instead, Defendant merely reiterates arguments that could have been and should have been raised previously. Specifically, Defendant contends that the Court erred when it found that Turley's transfer was pretextual. Rather, the Defendant contends that as a result of the transfer the case was moot. The Defendant further contends that the Court erred when it made findings regarding Turley's medical

---

[4] Assuming *arguendo* that the motion was untimely, which it is not, the Court notes that the motion also fails under the Rule 60(b) standard as Defendant failed to identify any fraud, mistake, or excusable neglect that would dictate a different result.

conditions absent the support of medical evidence. The Court rejects these arguments.

Regarding the pretextual transfer, Judge Williams specifically found as follows:

> "As Plaintiff points out, the reasons relating to visitation makes no sense. He has not had any visitors for 27 years and did not request the transfer to Hill in the first place. A second explanation given is that Mr. Turley meets the criteria for under 30 years to transfer to a Medium Security Facility. On its face, this seems like a simple, concrete, and non-pretextual reason for a transfer for which Plaintiff has no answer. But a quick review of the inmates at Hill Correctional Center that have cases currently open in this district, reveals that at least one inmate who is detained at Hill, Ricky Patterson, still has 37 years remaining on his sentence. The final rationale for transferring Mr. Turley, good adjustment – to include time on an Inside Grounds Crew, does appear credible. In fact the Court observed Mr. Turley working on the crew when it conducted the site visit in November 2016.
>
> Nevertheless, given the facts before the Court, the Court concludes that the other rationales provided for Mr. Turley's transfer are pretextual: Mr. Turley did not request the transfer, the transfer in no way facilitated visitation, and the supposed 30 year rule does not seem to actually apply, even when looking at the relatively small sample size of Hill inmates that currently have cases before the Court. Because these other reasons appear to be pretextual, the Court does not assign much weight to be given to Mr. Turley's adjustment as being responsible for the transfer. In fact, it appears that it is equally probable that the transfer had something to do with the pendency of this case."

(Doc. 370, ps. 17-18). Based on the above, it is clear that Judge Williams carefully considered and weighed the various rationales for transfer offered by the Defendant. He ultimately chose not to give much weight to the one reason offered by the Defendant that did not appear to be pretextual and concluded that it was equally probable that Turley's transfer was motivated by the instant case.

As the trier of fact, Judge Williams had the discretion to weigh the evidence in the manner he saw fit. Indeed, based on the prevailing case law, Judge Williams had good legal grounds for his decision. *See, e.g., Knox v. Service Employees Intern. Union, Local 1000*, 567 U.S. 298, 307 (2012)(noting that "[a]fter certiorari was granted, however, the union sent out a notice offering a full refund to all class members, and the union then promptly moved for dismissal of the case on the ground of mootness. Such post[-]certiorari maneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye.")(citing *City News & Novelty, Inc. v. Waukesha,* 531 U.S. 278, 283–284 (2001)).

Furthermore, the cases relied on by Defendant regarding pre-text are procedurally and substantively different from the case at bar. Those cases were at the summary judgment stage and in the employment context, where the ultimate issue was whether the non-moving party submitted sufficient evidence to send this case to the jury, *i.e.*, the trier of fact. Here, this case was at the post-trial briefing stage after Judge Williams held a bench trial and heard and received evidence on the matter. Judge Williams also permitted supplemental briefing on the issue of mootness and injunctive relief because Turley had been transferred after the trial had concluded. Judge Williams rendered his decision after the supplemental briefing had been submitted, obviously taking into account the argument of the parties. But, as the trier of fact, Judge Williams

was also permitted to consider, reject and weigh the evidence received at trial, and the Court does not find any manifest error in his findings.

With respect to the medical issues, Judge Williams found the following:

"The Cells in the North I cell house are too small to house two grown men for any extended period of time. The Court finds the practice of double celling inmates in North I over an extended period, even when taking into account ideal conditions wherein the inmates receive all scheduled recreation, programming, and meals outside of the cell, provides those inmates inadequate living space to meet 'minimal civilized measure of life's necessities.' These conditions are so extreme that they also cause an excessive risk to inmates' mental and physical health.

…

Do these additional conveniences, beyond what would be available in the two man box, in combination with the out of cell time available to inmates in North I, provide those inmates with the minimum civilized measure of life's necessities? They do not. Having stood inside one of these cells the Court, in considering all of the evidence, draws what seems to be the only logical and obvious, conclusion – the conditions are inhumane. Furthermore, why the Court does not have sufficient evidence to conclude that any of Mr. Turley's various physical ailments were caused by his time double celled in North I, the Court easily concludes that the cell size likely exacerbated his arthritis and Irritable bowel syndrome and further caused him considerable emotional distress beyond what can be expected, and accepted, in a prison setting.

…

It is obvious that inmates need exercise. The cells in North I do not allow for exercise. It is obvious that housing two inmates in a metal box where there is barely enough room to use the toilet or get out of the cell will, over a significant period of time, put the inmates at risk of severe mental distress. It is obvious that housing violent felons in these conditions over lengthy periods of time will create substantial increased risk of violence between inmates and directed at staff. And it is obvious that allowing inmates out of these cells for approximately 18 hours per week (when not on lockdown and the schedule is operating smoothly) is not enough to

alleviate these conditions."

(Doc. 370, ps. 9-14).

Clearly, Judge Williams provided a sound analysis of the evidence presented based on a review of the extensive record. The Court heard Turley's claim during a jury trial and heard the issue of injunctive relief during a bench trial. Further, Judge Williams visited Menard and physically stood and walked inside Turley's former cell on North I. Thus, as the trier of fact, Judge Williams was in the best position to make these findings. Additionally, Judge Williams allowed post-trial and supplemental briefing on the availability of injunctive relief in light of Turley's transfer. Simply put, Defendant failed to meet his burden under Federal Rule of Civil Procedure 59(e). Further, the Court does not find error in Judge Williams's factual findings or legal conclusions. In rendering this Order and the Memorandum and the Order and Injunction, the Court examined the record and the case law submitted by the parties. This Court does not find that there is any clear or manifest error of law or fact in Judge Williams's thorough findings and conclusions.

## CONCLUSION

Accordingly, the Court **DENIES** the motion to reconsider the Court's Order and injunction (Doc. 370) and judgment (Doc. 371) (Doc. 372).

**IT IS SO ORDERDED.**

Date: July 3, 2019.

Digitally signed by Judge Sison
Date: 2019.07.03 13:02:54 -05'00'

GILBERT C. SISON
United States Magistrate Judge